724 F.Supp. 753 (1989)
Ahmad Ghaderi NEJAD, et al., Plaintiffs,
v.
UNITED STATES of America, et al., Defendants.
Nos. CV 89-3991 AWT, 89-4610 AWT, 89-4618 AWT, 89-4665 AWT, and 89-5254 AWT.
United States District Court, C.D. California.
November 7, 1989.
*754 S. Shawn Khastoo, Khastoo, Saboorian & Associates, Beverly Hills, Cal., for plaintiffs.
Herbert L. Fenster, Raymond B. Biagini, Heather A. Garlock, William R. Stoughton, McKenna, Conner & Cuneo, Los Angeles, Cal., for Raytheon Co., Gen. Dynamics Corp., FMC Corp., Hughes Aircraft Co., The Johns Hopkins University and Unisys Corp.
James M. FitzSimons, Richard R. Nelson, Mendes & Mount, Los Angeles, Cal., for Martin Marietta Corp.
W. Reece Bader, Matthew D. Powers, Garrett Sanderson, Orrick, Herrington & Sutcliffe, San Francisco, Cal., W. Douglas Kari, Orrick, Herrington & Sutcliffe, Los Angeles, Cal., for Gen. Elec. Co. and RCA, Government Systems Div.
Joseph F. Coyne, Jr., Mary E. Tarduno, Ryan D. McCortney, Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., for Honeywell Corp.
Elliot E. Polebaum, Molly Munger, Milton Eisenberg, P.C., Fried, Frank, Harris, Shriver & Jacobson, Washington, D.C., for Computer Sciences Corp.
Stuart E. Schiffer, Acting Asst. Atty. Gen., Gary W. Allen, Director, Aviation/Admiralty Torts Branch, David V. Hutchinson, Asst. Director, Admiralty Torts Branch, John J. Connors, U.S. Dept. of Justice, Torts Branch, Civ. Div., Washington, D.C., James R. Sullivan, Asst. U.S. Atty., Asst. Chief, Civ. Div., Los Angeles, Cal., for U.S.

MEMORANDUM OPINION
TASHIMA, District Judge.
This is an action arising out of the downing of Iran Air Flight 655 on July 3, 1988. Flight 655 was shot down over the Persian Gulf by missile fire from the USS Vincennes. All 290 passengers and crew aboard the aircraft died. Plaintiffs are "the families and economic dependents" of four of the passengers aboard Flight 655 who perished aboard the flight. Defendants are the United States and 12 defense contractors who supplied the ship or various of its equipment and systems, including the AEGIS weapon system to the United States Navy.
On the basis of materials supplied by the government and unchallenged by any other party, the Court takes judicial notice of the following facts:[1]
The Vincennes was sent to the Persian Gulf by the President to protect neutral shipping from the war between Iran and Iraq. On July 4, 1988, the day after the incident, the President reported to Congress that at the time of the incident the Vincennes was under fire from Iranian gunboats and that it believed Flight 655 to be a hostile military aircraft. "Regrettably, in the course of the U.S. attack, an Iranian civilian airliner was shot down by the Vincennes, which was firing in self defense at what it believed to be a hostile Iranian military aircraft." The President further stated that "The actions of U.S. forces in response to being attacked by Iranian small boats were taken in accordance with our inherent right of self-defense, as recognized in Article 5 of the United Nations Charter, and pursuant to my constitutional authority with respect to the conduct of foreign relations and as Commander in Chief." Although the United States later announced that it would make ex gratia payment to families of the victims, it continues to maintain its position that its actions constituted the lawful use of force in self-defense and that Iran was ultimately responsible for the incident.
The first claim is for wrongful death; the second claim for negligent manufacture; the third claim for strict liability; the fourth claim for breach of implied warranty; and, the fifth claim for punitive damages. All defendants who have appeared have moved to dismiss on various grounds. Each of these grounds is briefly discussed below.

*755 I. NONJUSTICIABILITY
In Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), the Court set forth the several formulations which describe the settings which give rise to a political, or nonjusticiable, question.
Prominent on the surface of any case held to involve a political question is found [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.
Id. at 217, 82 S.Ct. at 710. Ultimately, it is a function of the separation of powers. Further, "Unless one of these formulations is inextricable from the case at bar, there should be no dismissal for nonjusticiability on the ground of a political question's presence." Id.
Here, it is indubitably clear that plaintiffs' claim calls into question the Navy's decisions and actions in execution of those decisions. The conduct of such affairs are constitutionally committed to the President as Commander in Chief and to his military and naval subordinates. Thus, the claim here implicates possibly all and at least formulations [1], [4], [5] and [6] of Baker v. Carr. Plaintiffs contend that they do not call into question the President's decision to send U.S. warships to the Persian Gulf, but only the negligent manner in which the President's decision was carried out. This contention too must fail.
[T]he same considerations which preclude judicial examination of the decision to act must necessarily bar examination of the manner in which that decision was executed by the President's subordinates. The textual commitment to the President as commander in chief of authority for military decisions entails that his decision may be implemented without judicial scrutiny. Moreover, courts lack standards with which to judge whether reasonable care was taken to achieve tactical objectives in combat while minimizing injury and loss of life.
Rappenecker v. United States, 509 F.Supp. 1024, 1030 (N.D.Cal.1980) (citations omitted).

II. STATE SECRETS
Defendants claim that adjudication of plaintiffs' claim is barred by the state secrets privilege.
In United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953), the Court held that the government may hold military secrets as an absolute privilege and set forth the contours of the state secrets privilege:
The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party. It is not to be lightly invoked. There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect.
Id. at 7-8, 73 S.Ct. at 531-32 (citations omitted). The Court then discussed how the invocation of the state secrets privilege should be evaluated.
It may be possible to satisfy the court, from all the circumstances of the case, that there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged. When this is the case, the occasion for the privilege is appropriate, and the court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, *756 even by the judge alone, in chambers.
Id. at 10, 73 S.Ct. at 533.
Here, the requirements for invocation of the privilege are fully met. The Secretary of the Navy himself has lodged his formal claim of privilege. It is evident from his declaration that he, as head of the department, has invoked the privilege only "after actual personal consideration." Id. at 8, 73 S.Ct. at 532.
Particular reference is made by the Secretary of the Navy to the necessity of not disclosing the technology involved in the AEGIS weapon system, which he describes as "the Navy's most advanced air defense system" which is expected to "provide the primary surface ship-based air defense protection for our aircraft carrier battle groups well into the 21st century." Obviously, the Executive's claim that disclosure of this technology on the public record could be harmful to the national security is not lightly to be disregarded. The Court finds that disclosure of the AEGIS system technology, without which the case cannot be tried, would be harmful to the national security. The same is true of disclosure of the rules of engagement and military operational orders under which the Vincennes was operating at the time of the incident. Therefore, the Court determines that the state secrets doctrine has been appropriately invoked in the circumstances of this case.

III. SOVEREIGN IMMUNITY
As against the United States, plaintiffs purport to bring this action under both the Federal Tort Claim Act ("FTCA"), 28 U.S.C. § 1346(b) and the Public Vessels Act ("PVA"), 46 U.S.C.App. § 781 et seq. However, the remedies provided by those two statutes are mutually exclusive of each other. See 28 U.S.C. § 2680. The instant action is clearly a maritime claim. See Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). Thus, this action must be brought, if at all, under the PVA. See Guidry v. Durkin, 834 F.2d 1465, 1472-73 (9th Cir.1987).
The PVA provides, in part:
No suit shall be brought under this chapter [the PVA] by a national of any foreign government unless it shall appear to the satisfaction of the court in which suit is brought that said government, under similar circumstances, allows nationals of the United States to sue in its courts.
46 U.S.C.App. § 785. Under this provision, plaintiffs have the burden of demonstrating that reciprocity is available because it is a condition to the government's waiver of its sovereign immunity. United States v. United Continental Tuna Corp., 425 U.S. 164, 181, 96 S.Ct. 1319, 1329, 47 L.Ed.2d 653 (1976). Such reciprocity  access to the courts in Iran by citizens of the United States  does not exist. See, e.g., Rockwell Int'l Sys., Inc. v. Citibank, N.A., 719 F.2d 583, 587-88 (2d Cir.1983); McDonnell Douglas Corp. v. Islamic Republic of Iran, 591 F.Supp. 293, 303-08 (E.D.Mo. 1984), aff'd, 758 F.2d 341 (8th Cir.), cert. denied, 474 U.S. 948, 106 S.Ct. 347, 88 L.Ed.2d 294 (1985). The United States has not consented to be sued under these circumstances.

IV. STANDING
This wrongful death action is brought under the Death on the High Seas Act ("DOHSA"), 46 U.S.C.App. § 761 et seq. It is not disputed that, if a claim can be maintained, DOHSA provides the jurisdictional basis as against the non-government defendants. However, DOHSA requires that the action be brought by the "personal representative of the decedent." 46 U.S.C.App. § 761.
Plaintiffs do not allege and they do not contend that they are the "personal representatives of the decedents." Thus, the action must be dismissed on the ground that plaintiffs lack standing to maintain this action. See Favaloro v. S/S Golden Gate, 687 F.Supp. 475, 478-79 (N.D.Cal. 1987).

V. CONCLUSION
For the reasons set forth above, each of these actions must be dismissed. In the *757 circumstances of these actions, it is clear that plaintiffs cannot amend their complaint to plead viable claims. The motions of defendants to dismiss are granted and, consistent herewith, an Order of Dismissal shall be entered as against all defendants.
NOTES
[1] Facts subject to judicial notice may be considered on a motion to dismiss. Mullis v. United States Bankruptcy Court, 828 F.2d 1385, 1388 (9th Cir.1987), cert. denied, ___ U.S. ___, 108 S.Ct. 2031, 100 L.Ed.2d 616 (1988).