David ZUCKERBRAUN, Plaintiff,

v.

GENERAL DYNAMICS CORP., et al., Defendants.

Civ. No. H–90–401 (EBB).

United States District Court, D. Connecticut.

Dec. 6, 1990.

James J. Courtney, Suisman, Shapiro, Wool, Brennan & Gray, New London, Conn., for plaintiff.

Francis H. Morrison, III, Day, Berry & Howard, James M. Moher, Jack G. Steigelfest, Howard, Kohn, Sprague & Fitzgerald, Wesley W. Horton, Charles M. Rice, Jr., Moller, Horton & Fineberg, George C. Vitelli, Robinson & Cole, Hartford, Conn., Raymond B. Biaginin, Margaret M. Antinori, William R. Stoughton, Herbert L. Fenster, McKenna & Cuneo, Washington, D.C., Matthew D. Powers, Edward R. Reines, W. Reece Bader, Orrick, Herrington & Sutcliffe, San Francisco, Cal., Debra J. Kossow, Sr. Admiralty Counsel, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., John F. Conway, New Haven, Conn., for defendants.

## RULING ON MOTIONS TO DISMISS

ELLEN B. BURNS, Chief Judge.

The plaintiff, as Administrator of the Estate of Earl Patton Ryals, filed this suit in connection with the incident on May 17, 1987, in which the *USS Stark* was fired on by an Iraqi F–1 Mirage aircraft while cruising in the Persian Gulf. Thirty-seven United States Navy sailors, including the plaintiff's decedent, were killed. Jurisdiction is founded on 28 U.S.C. § 1331, and this case was brought under the Death on the High Seas Act, 46 U.S.C.App. § 761 *et seq.*

The plaintiff filed this action against General Dynamics Corporation, Raytheon Company, FMC Corporation, Hughes Aircraft Company, Unisys Corporation, and RCA Corporation, Government Systems Division [hereinafter "private defendants"] as designers, manufacturers, testers, and/or marketers of the Phalanx Anti–Missile System, its component parts and the ship's remaining weapon systems. In the first count of his complaint, the plaintiff alleges that these defendants negligently designed, manufactured, and tested the weapons systems. The second count alleges that these defendants breached their implied warranty of merchantability and fitness of the weapons systems for the purposes for which they were intended. In addition, the third count alleges that the weapons systems were unreasonably dangerous because they were defectively designed, manufactured, and/or tested. Finally, the last count alleges that the defendant General Dynamics performed reliability tests in a negligent manner, and intentionally misrepresented and fraudulently concealed the test results.

On August 24, 1990, this court granted the motion of the United States to intervene. Pending before this court are motions to dismiss filed by the United States and the private defendants. The United States moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6) because the court lacks subject matter jurisdiction and because the complaint fails to state a claim upon which relief may be granted. The

United States invokes the state secrets doctrine, arguing that disclosure of specifics about the *USS Stark* weapons systems would be necessary for the plaintiff to make a prima facie case. The Government argues such disclosure would threaten national security and that the case should therefore be dismissed. The United States also argues that the political question doctrine renders the case nonjusticiable and requires dismissal.[1] The private defendants join in and support the United States' motion. Their memoranda in support of their motion to dismiss make arguments similar to the United States' memoranda, but also argue that the United States' espousal[2] of the plaintiff's claim precludes maintenance of the present claim and that courts should not entertain tort actions arising out of the engagement of United States armed forces in areas of hostility.

At the request of the Government, this court takes judicial notice of the following facts:

The war between Iran and Iraq, which began in 1980, has resulted in over 450 air attacks on Persian Gulf shipping from 1984 to 1987, with an increasing number of attacks on ships trading with Kuwait. In 1986 Kuwait sought protection from Iranian attack for their shipping from the United States, the Soviet Union, Great Britain, France and China. A major objective of the national security policy of the United States in 1987 was ensuring the continued access by the Free World to the oil supplies in the Persian Gulf. In 1987, the United States agreed to reflag Kuwaiti ships under U.S. registry and provide naval protection for such ships. The United States maintains a continuing naval presence in the Persian Gulf to escort American flag ships and certain ships especially reflagged as American and to respond to attacks on American flag and other neutral ships. After the aerial attack on the *USS Stark* by an Iraqi warplane on May 17, 1987, the Government of Iraq, pursuant to an international agreement, provided $27,350,-374.00 in compensation to the United States for claims arising out of the deaths of 37 individuals, including the plaintiff's decedent. Iraq transferred this amount to the United States, which in turn, distributed the checks to the individual beneficiaries of this claims settlement. The United States has deployed additional naval forces to the Persian Gulf in response to Iraq's recent invasion of Kuwait.[3]

## DISCUSSION

A motion to dismiss for failure to state a claim should only be granted if "it appears

---

1. The defendants have moved to dismiss for lack of subject matter jurisdiction, but they argue that the case is nonjusticiable. The defendants seem to be confused as to the distinction between lack of subject matter jurisdiction and nonjusticiability. The Supreme Court has explained the significant difference between these two grounds for dismissal;

   [i]n the instance of nonjusticiability, consideration of the cause is not wholly and immediately foreclosed; rather, the Court's inquiry necessarily proceeds to the point of deciding whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded. In the instance of lack of jurisdiction the cause either does not "arise under" the Federal Constitution, laws or treaties (or fall within one of the other enumerated categories of Art. II, § 2), or is not a "case or controversy" within the meaning of that section; or the cause is not one described by any jurisdictional statute.

   *Baker v. Carr,* 369 U.S. 186, 198, 82 S.Ct. 691, 699, 7 L.Ed.2d 663 (1961).

   Therefore, as the court in *Greenham Women Against Cruise Missiles v. Reagan,* 591 F.Supp. 1332, 1333 n. 1 (S.D.N.Y.1984), *aff'd,* 755 F.2d 34 (2d Cir.1985), did, this court will ignore the defendants' request to dismiss the case for lack of subject matter jurisdiction and analyze the motion in terms of whether this case presents a justiciable controversy.

2. Espousal is the assertion of the private claims of United States nationals by the government against another sovereign. *Dames & Moore v. Regan,* 453 U.S. 654, 680, 101 S.Ct. 2972, 2987, 69 L.Ed.2d 918 (1981); *Asociacion de Reclamantes v. United Mexican States,* 735 F.2d 1517 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1051, 105 S.Ct. 1751, 84 L.Ed.2d 815 (1985).

3. The plaintiff has not objected to this request to take judicial notice. It is appropriate to consider facts subject to judicial notice on a motion to dismiss. *See, e.g., Mullis v. United States Bankruptcy Court,* 828 F.2d 1385, 1388 (9th Cir.1987), *cert. denied,* 486 U.S. 1040, 108 S.Ct. 2031, 100 L.Ed.2d 616 (1988).

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). "The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980). In considering a motion to dismiss, the court must presume all factual allegations of the complaint to be true and must draw any reasonable inferences in favor of the nonmoving party.

### 1. *State Secrets*

■ The state secrets privilege is an evidentiary one which may only be asserted by the Government. *United States v. Reynolds*, 345 U.S. 1, 7, 73 S.Ct. 528, 531, 97 L.Ed. 727 (1953). The purpose of the privilege is to "protect[ ] information not officially disclosed to the public concerning the national defense or the international relations of the United States." 8 Wright & Miller, *Federal Practice and Procedure*, § 2019, at 158 (1970). The Government only needs to show that "from all the circumstances of the case, . . . there is a reasonable danger that compulsion of the evidence will expose matters which, in the interest of national security, should not be divulged." *Reynolds*, 345 U.S. at 10, 73 S.Ct. at 533.

In *Reynolds*, the Supreme Court discussed the dilemma facing a court evaluating a claim of privilege; "[t]oo much inquiry would force disclosure of the thing the privilege was meant to protect, while a complete abandonment would lead to intolerable abuses." *Id.* at 8, 73 S.Ct. at 532 (discussing the analogous privilege against self-incrimination). Therefore, if a court is satisfied that a reasonable danger to security interests has been established, "the

court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers." *Id.* at 10, 73 S.Ct. at 533.[4]

The requirements for an assertion of the state secrets privilege are that "[t]here must be a formal claim of privilege, lodged by the head of the department which has control of the matter, after personal consideration by that officer." *Id.* at 7–8, 73 S.Ct. at 531–32. The court must then evaluate the claim, according the utmost deference to the executive official, *National Lawyers Guild v. Attorney General*, 96 F.R.D. 390, 398 (S.D.N.Y.1982), yet not abdicating judicial control of the evidence of the case to executive officers. *Reynolds*, 345 U.S. at 9, 73 S.Ct. at 532.

Once it is successfully invoked, the privilege is absolute. Although it "should not be lightly accepted, . . . even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake." *Reynolds*, 345 U.S. at 11, 73 S.Ct. at 533. "A party's need for the information is not a factor in considering whether the privilege will apply." *Northrop Corp. v. McDonnell Douglas*, 751 F.2d 395, 399 (D.C.Cir. 1984). A party's need for the information is only to be considered to determine "how far the court should probe in satisfying itself that the occasion for invoking the privilege is appropriate." *Reynolds*, 345 U.S. at 11, 73 S.Ct. at 533. *See also Halkin v. Helms*, 690 F.2d 977, 990 (D.C.Cir. 1982).

■ The effect a successful invocation of the privilege has on a case varies; the "court must consider whether and how the case may proceed in light of the privilege." *Fitzgerald v. Penthouse Internat'l, Ltd.*, 776 F.2d 1236, 1243 (4th Cir.1985). At the least, the privilege removes the sensitive information from the case completely. *In re United States*, 872 F.2d 472, 476 (D.C.

---

**4.** *See also Knopf v. Colby*, 509 F.2d 1362, 1369 (4th Cir.1975), *cert. denied* 421 U.S. 992, 95 S.Ct. 1999, 44 L.Ed.2d 482, *reh'g denied*, 422 U.S. 1049, 95 S.Ct. 2669, 45 L.Ed.2d 702 ("[i]n our

own chambers, we are ill equipped to provide the kind of security highly sensitive information should have").

Cir.1989). If the plaintiff is unable to establish a prima facie case without the privileged information, *id.*, or if sensitive military secrets are "so central to the subject matter of the litigation that any attempt to proceed will threaten disclosure of the privilege," dismissal of the case is appropriate. *Fitzgerald v. Penthouse Internat'l, Ltd.*, 776 F.2d 1236, 1241–42 (4th Cir.1985). Similarly, if the information is essential to the defense, then summary judgment against the plaintiff may be appropriate. *In re United States*, 872 F.2d at 476; *see, e.g., Molerio v. Federal Bureau of Investigation*, 749 F.2d 815 (D.C.Cir.1984). If, however, the plaintiff has sufficient admissible evidence to allow a judgment in its favor without the privileged information, the case may go forward. *Farnsworth Cannon, Inc. v. Grimes*, 635 F.2d 268, 271 (4th Cir. 1980). Dismissal of a case without allowing the plaintiff a day in court is draconian. *In re United States*, 872 F.2d at 477; *Spock v. United States*, 464 F.Supp. 510, 519 (S.D.N.Y.1978) ("[a]n aggrieved party should not lightly be deprived of the constitutional right to petition the courts for relief"). Hence, dismissal should not be allowed if the court is able to fashion procedures to protect against disclosure. *Fitzgerald*, 776 F.2d at 1243; *see, e.g., Farnsworth*, 635 F.2d at 275–276 (suggesting such procedures as a waiver by the parties of their right to a jury trial with an *in camera* disposition by the judge); *In re United States*, 872 F.2d at 478. "[W]henever possible, sensitive information must be disentangled from nonsensitive information to allow for the release of the latter." *Ellsberg v. Mitchell*, 709 F.2d 51, 57 (D.C. Cir.1983).

■ The formal requirements for the assertion of the state secrets privilege are met in this case. The Government has invoked the privilege. H. Lawrence Garrett, III, Secretary of the Navy, has submitted an affidavit stating "I have personally reviewed the classification of [the] ... types of information [that plaintiffs would require in order to establish legally sufficient claims] and determine that its disclosure would cause damage to the national security of the United States." Affidavit at 2–3. The Secretary reviewed the plaintiff's allegations and concluded that the plaintiff would need access to the following information to prove his prima facie case:

a. The rules of engagement authorized for, and military operational orders applicable to, USS STARK at the time of the incident; and

b. General technical information regarding the design, performance and functional characteristics of combatant ships and the weapons and defense systems installed thereon, including operational and tactical tests and evaluations, and hardware applications and descriptions.

Affidavit at 3. The Secretary lists specific aspects of the weapons systems on the *USS Stark* that are classified, including features of the "Phalanx" weapons system. According to the Government's memorandum in support of its motion to dismiss, this system is our last line of defense against incoming missiles. Government Memorandum at 10.

The *USS Stark* is an Oliver Perry class frigate, which is the United States' most advanced frigate. There are fifty-one such frigates commissioned, and they are expected to be the primary class of frigates into the twenty-first century. Affidavit at 1. The Secretary states that the defensive weapons on the *USS Stark* represent significant advances in technology over other systems and that "[d]isclosure of such information would be particularly harmful because of the large number of Oliver Hazard Perry class frigates and other ships equipped with those defensive weapons, and the lengthy period of service expected of those ships." Affidavit at 11. In addition, the Secretary concluded that public disclosure of classified information involving the weapons systems installed on the *USS Stark*

would permit foreign powers to exploit weaknesses and to adopt specific counter-measures. Disclosure of such information would provide potential enemies of the United States with detailed information regarding the capabilities of these weapons systems and the USS

STARK, which would aid them in identifying potential areas of military vulnerability which may exist in those systems and in that ship and similar types of ships. Such disclosures would therefore permit potential enemies to develop and employ diversionary or deceptive tactics and counter-measures with increased confidence, and to construct offensive actions with greater confidence in the likely United States' technical response and defense to those actions.

Affidavit at 11. The Secretary further concluded that

> [d]isclosure of the rules of engagement under which USS STARK operated would enable potential adversaries to predict more accurately the rules governing U.S. Navy ships in high threat environments. With such knowledge, an adversary could take action against an American vessel with greater assurance that an American response was prohibited, or could graduate its provocation, and time the massing of its forces, in a way calculated to disable the United States.

Affidavit at 12–13.

This court concludes that the Government has appropriately invoked the state secrets privilege as to the weapons systems on the *USS Stark* and as to the rules of engagement.[5] Further inquiry into the application for the privilege is unnecessary because it is apparent from all the circumstances involved that there is a reasonable danger that disclosure of the information in question would pose a threat to national security.[6] It is now necessary for the court to determine whether and how to proceed with the case.

■ Since the plaintiff would not have access to information necessary to present a prima facie case, this case must be dismissed. This is one of those situations where "the very question upon which the case turns is itself a state secret." *Fitzgerald*, 776 F.2d at 1239, n. 3. As the defendants convincingly argue, maintenance of the plaintiff's case would require the disclosure of classified state secrets. In order to prove his allegations that the defendants negligently and defectively designed, manufactured, and tested the weapons systems, that the weapons were not fit for their intended purpose, and that General Dynamics negligently tested the weapons and intentionally misrepresented the test results, the plaintiff would have to conduct an examination of the capabilities and limitations of the defensive systems installed on the *USS Stark*. According to the Secretary, the capabilities and limitations of these weapons systems are classified state secrets which may not be revealed. Furthermore, as the defendants argue, in order to establish that the weapons systems caused the harm, an inquiry into the conduct of the crew of the *USS Stark* would be necessary. This inquiry would have to include an examination of the applicable rules of engagement, the orders issued by the naval chain of command, and whether those orders were properly carried out. Again, the Secretary has asserted that the rules of engagement are classified state secrets which may not be revealed.

The plaintiff argues that dismissal would be premature at this time. This argument is unconvincing when the plaintiff has

---

**5.** In two similar cases arising out of the incident in the Persian Gulf in which Iran flight 655 was shot down by missiles fired from the *USS Vincennes* in July 1988, two district courts in California found that the Secretary of the Navy properly invoked the state secrets doctrine. *Nejad v. United States*, 724 F.Supp. 753 (C.D.Cal. 1989); *Bailey v. Varian Associates*, Nos. C–89–2338 (TEH), C–89–2872 (TEH), & C–90–0337 (TEH) (N.D.Cal. June 11, 1990), *appeal docketed*, No. 90–1659 (9th Cir.). The Secretary invoked the privilege as to information about the technology of the AEGIS weapon system on board the *Vincennes*, the rules of engagement, and the military operational orders under

which the *Vincennes* was operating. The court in *Nejad* stated that "[o]bviously, the Executive's claim that disclosure of this technology could be harmful to the national security is not lightly to be disregarded." 724 F.Supp. at 756.

**6.** Hence, the plaintiff's request for *in camera* proceedings to resolve disputed issues of privilege will not be granted. As stated above, such proceedings may be useful in some cases, but are not always necessary. *See Reynolds*, 345 U.S. at 10, 73 S.Ct. at 533; *Northrop*, 751 F.2d at 401.

failed to demonstrate how he would be able to present a prima facie case without resort to classified state secrets. The plaintiff conceded at oral argument that the case may well involve state secrets, but gave no indication as to how he would be able to proceed successfully with his case. Although it is true that the state secrets privilege is an evidentiary privilege, it is also true that, if it is clear at the outset that the plaintiff will be unable to present a prima facie case because of the state secrets doctrine, dismissal is entirely appropriate.[7] The invocation of the state secrets privilege here encompasses so much of the information that the plaintiff would need to establish a prima facie case that the plaintiff's suggestions to redact privileged information, to later separate nonsensitive information from sensitive information, to engage in an item by item determination of privilege, to have a bench trial, or to assign a special master, are unworkable.[8] In sum, the case must be dismissed because the successful invocation of the state secrets privilege would prevent the plaintiff from stating a claim upon which relief may be granted.

### 2. *Political Question*

■ The Supreme Court in *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962), listed six characteristics of political question cases:

a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

In addition, "[u]nless one of these formulations is inextricable from the case at bar, there should be no dismissal for nonjusticiability on the ground of a political question's presence." *Id.*

The Government and the private defendants argue that at least three of these elements are present in this case: foreign policy and military operations are constitutionally committed to the executive branch; there is a lack of judicially manageable standards to resolve the case because the incident was military; there is the potential for embarrassment from multifarious pronouncements by various branches because of diplomatic efforts initiated by the Department of State. The private defendants also argue that a decision by the court in this case would demonstrate a lack of respect for coordinate branches.

---

7. The plaintiff's reliance on *Clift v. United States*, 597 F.2d 826 (2d Cir.1979), to argue that this case should not be dismissed is misplaced. In *Clift*, the Second Circuit reversed this court's decision to dismiss on the grounds of state secrets. The Second Circuit sustained this court's denial of discovery at that time because of the invocation of the state secrets privilege. However, the court found dismissal of the case to be unnecessary at that time:

[the plaintiff] would be better advised to wait and see whether improvements in the art or other developments might make it feasible for the Government to produce some documents under some safeguards. In time the cryptographic systems now considered so secret may be as obsolete as the giant computer that broke the German code in World War II. We therefore remand the case to the district court for further proceedings, including, if the court

finds this desirable, the entry of an appropriate stay.

*Id.* at 830.

Discovery in *Clift* continues to date to be unavailable. Moreover, the Secretary's affidavit in this case makes clear that the possibility that the Government will be at liberty to disclose the relevant information is much too remote to warrant that this case proceed, even with a stay.

8. Furthermore, the plaintiff's objection to the private defendants' assertion of the state secrets privilege is irrelevant. If the plaintiff is unable to proceed with the case against the private defendants because the Government has invoked the state secrets privilege, the case must be dismissed as to the private defendants, whether they have joined with the Government in the assertion of the state secrets privilege or not.

Article II, section 2 of the United States Constitution gives the President control of foreign affairs and of the military as Commander in Chief of the armed forces. The Supreme Court stated in *Haig v. Agee*, 453 U.S. 280, 292, 101 S.Ct. 2766, 2774, 69 L.Ed.2d 640 (1980) that "[m]atters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention." In *Gilligan v. Morgan*, 413 U.S. 1, 10, 93 S.Ct. 2440, 2446, 37 L.Ed.2d 407 (1973), the Supreme Court explained that:

> [i]t would be difficult to think of a clearer example of the type of governmental action that was intended by the Constitution to be left to the political branches directly responsible—as the Judicial Branch is not—to the electoral process. Moreover, it is difficult to conceive of an area of governmental activity in which the courts have less competence. The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject *always* to civilian control of the Legislative and Executive Branches.

However, in *Baker v. Carr*, 369 U.S. at 211–12, 82 S.Ct. at 707, the Supreme Court warned that

> it is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance. Our cases in this field seem invariably to show a discriminating analysis of the particular question posed, in terms of the history of its management by the political branches, of its susceptibility to judicial handling in the light of its nature

and posture in the specific case, and of the possible consequences of judicial action.

Similarly, the court in *Owens v. Brown*, 455 F.Supp. 291, 300 (D.D.C.1978), stated

> [w]hether the deference due particular military determinations rises to the level of occasioning nonreviewability is a question that varies from case to case and turns on the degree to which the specific determinations are laden with discretion and the likelihood that judicial resolution will involve the courts in an inappropriate degree of supervision over primary military activities.

The Supreme Court further cautioned in *Japan Whaling Ass'n v. American Cetacean Society*, 478 U.S. 221, 230, 106 S.Ct. 2860, 2866, 92 L.Ed.2d 166 (1986) that

> the political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch.... But under the Constitution, one of the Judiciary's characteristic roles is to interpret statutes, and we cannot shirk this responsibility merely because our decision may have significant political overtones.

This court accepts the defendants' arguments that this case involves a textually demonstrable commitment to the executive branch and that it presents a lack of judicially discoverable and manageable standards to resolve it.[9] Although the plaintiff is correct in distinguishing this case from the cases cited by the defendants in which parties directly challenge foreign policy

---

9. The defendants' arguments about the risk of multifarious pronouncements are not persuasive. The position of the United States Government that Iraq was liable for the incident would not necessarily be inconsistent with a finding of liability against these defendants. As the plaintiff argues, the United States' position does not appear to be that Iraq was the sole cause of the incident. Therefore, a judgment against the defendants in this case would not impose a risk of multifarious pronouncements.

Furthermore, the United States' espousal of claims arising from this incident with Iraq does not preclude maintenance of this action against these defendants. This espousal of claims may have finally settled the matter of liability against the Government of Iraq, but it did not settle the matter with respect to the liability of other defendants. Final settlement between sovereigns does release the defendant sovereign from further liability. *Asociacion de Reclamantes*, 735 F.2d at 1523. However, the defendants have not cited any authority supporting their position that the loss of the defendants' right of contribution from Iraq because of the United States' espousal requires dismissal of this suit against them.

and military decisions of the United States government,[10] it seems unavoidable that this case would touch on military decisions which are committed to the executive branch and for which the court lacks judicially manageable standards. On the issue of causation, this court would need to examine the appropriateness of the rules of engagement and the standing orders, which are committed to the executive branch. This court would also need to evaluate the appropriateness of the reaction of the *USS Stark* crew to the May 17, 1987 incident in order to determine its cause. As the court in *Rappenecker*, 509 F.Supp. at 1030, noted, "courts lack standards with which to judge whether reasonable care was taken to achieve tactical objectives in combat while minimizing injury and loss of life." In sum, this case must be dismissed because it presents nonjusticiable questions, as well as because of the successful invocation of the state secrets doctrine.[11]

CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss are granted.

SO ORDERED.

---

**10.** This is not a case against the United States government or its officers. *See, e.g., Nejad v. United States,* 724 F.Supp. 753, (C.D.Cal.1989) (suit against United States and defense contractors brought by relatives of passengers aboard Iran Air Flight 655 who died when the flight was shot down by missile fire shot from the *USS Vincennes* ); *Rappenecker v. United States,* 509 F.Supp. 1024 (N.D.Cal.1980) (suit against United States for personal injuries allegedly suffered during United States military operations in response to seizure of S.S. Mayaguez by Cambodian gunboats). Nor does it *directly* challenge any foreign policy or military decisions. *See, e.g., Greenham Women Against Cruise Missiles v. Reagan,* 591 F.Supp. 1332 (S.D.N.Y. 1984), *aff'd,* 755 F.2d 34 (2d Cir.1985) (challenging United States Government's decision to deploy cruise missiles at an air force base in Great Britain); *Sanchez–Espinoza v. Reagan,* 568 F.Supp. 596 (D.D.C.1983), *aff'd* 770 F.2d 202

(D.C.Cir.1985) (challenging the legality of the United States Government's activities in Nicaragua); *DaCosta v. Laird,* 471 F.2d 1146 (2d Cir. 1973) (challenging the legality of the President's decision to mine harbors and to continue air and naval strikes in North Vietnam). Hence, this case is easily distinguished from most cases relied on by the defendants.

The court also notes that the defendants' arguments as to what this court would have to examine if this case were to go forward are too sweeping. For example, this court would not need to question the President's decision to send ships to the Persian Gulf.

**11.** Since this case must be dismissed on the grounds of the state secrets and political question doctrines, this court finds it unnecessary to consider the private defendants' novel arguments that tort immunity should be extended to them in this situation.