**John B. GORDON, et al.**

v.

**STATE OF TEXAS, et al.**

**Civil Action No. G–96–407.**

United States District Court,
S.D. Texas,
Galveston Division.

May 27, 1997.

William Alan McNeill, Beaumont, TX, for John B. Gordon, Marie Gordon, K. M. Shipley, T. E. Moor, III, Glenn David Moor, Boyd Arnold, Patsie Arnold, Marian Caffrey Campbell, Billy Bryant, Martha Anderson, James D. McNiholas, Pete Anselmo, Dorothy Anselmo, Ann Bryant, Roy Steinhagen, Kim Steinhagen, Jack McNeill, Kelly McNeill, Charles Fontenier, Wanda Fontenier, James D. Hearn, Sandra Hearn.

Joseph Martin Green, Beaumont, TX, for Joe E. Polk, Carol Polk, Rita Polk Wilcox, Lyn Kennett, Patrick A. Green, Theresa Green, Ralph Sauer, Margaret Jo Sauer.

Liz Bills, Office of Attorney General, Energy Division, Austin, TX, for State of Texas, Texas Parks & Wildlife.

James Richard Watkins, Royston Rayzor Vickery & Williams, Galveston, TX, David P. Walker, Galveston, TX, Mary W. Carter, Blackburn & Carter, Houston, TX, David R. Walker, Royston Rayzor Vickery and Williams, Houston, TX, for Gulf Coast Rod, Gulf Coast Rod & Reel Club.

Barry C. Willey, Galveston County Legal Dept., Galveston, TX, for County of Galveston.

Paul D. Palmer, Office of Attorney General, Austin, TX, for Texas General Land Office.

David R. Walker, Royston Rayzor Vickery and Williams, Houston, TX, for Wayne Stupka, David Desormeaux, Floyd W. Morrison, Jr., John Eberling, Jr.

### *ORDER*

KENT, District Judge.

This case arises out of the erosion of Plaintiffs' and Intervenors'[1] properties on Bolivar Peninsula, which these parties allege is the result of acts of the numerous Defendants herein sued. In this case, Plaintiffs quite literally ask this Court to find Defendants liable for and further prevent them from interfering with Mother Nature. By this request, however, Plaintiffs ask this Court itself to fool with Mother Nature, an act

---

1. Hereinafter referred to as Plaintiffs.

which the Court is neither inclined nor empowered to undertake. Now before the Court are: Defendants State of Texas and Texas Parks and Wildlife Department's Motion to Dismiss of January 31, 1997; Defendant Texas General Land Office's Motion to Dismiss of January 31, 1997; Defendant County of Galveston's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment of January 31, 1997; Defendant Gulf Coast Rod, Reel and Gun Club's Motion for Summary Judgment of January 31, 1997; and Defendant Texas Parks and Wildlife Department's Motion to Dismiss Claims of Steinhagen Plaintiffs and Polk Intervenors of March 3, 1997. For the reasons set forth below, all Motions are **GRANTED,** and all claims asserted herein by all Plaintiffs are **DISMISSED WITH PREJUDICE.**

The underlying facts of this case literally began a long time ago in a little village by the sea. In the early 1940s, the Gulf Coast Rod, Reel and Gun Club ("Club") acquired approximately twenty-two acres of land at Rollover on the Bolivar Peninsula in Galveston County, Texas. In 1954, the Club granted a permanent easement over a portion of this tract of land to the Texas Game and Fish Commission, the predecessor to the Texas Parks and Wildlife Department. The Club granted the easement for the sole purpose of the construction and maintenance of a fish pass. The Texas Game and Fish Commission obtained a permit from the United States Army Corps of Engineers and dredged a cut on the land comprising the easement. This cut became known as Rollover Fish Pass, or simply "the Cut." Rollover Fish Pass was opened in 1955 and has been

continuously open since around 1959. In 1987, the Club agreed to lease the remainder of its land adjacent to Rollover Pass to the County of Galveston for use as a public park. The lease began on January 1, 1988 and has been renewed on an annual basis since that time, and the property is still used as a county-maintained public park.

Plaintiffs in this case, which consists of several consolidated cases,[2] are current or prior owners of beachfront property on Bolivar Peninsula. They complain of the loss of their property from erosion, or avulsion, as a result of the Cut. They claim that the 1954 act of dredging Rollover Fish Pass was a concerted and conspiratorial effort by Defendants herein that resulted in an unnatural distortion of the Texas coast, which in turn caused the loss of Plaintiffs' property through erosion. Plaintiffs complain that the acts of constructing, dredging, and maintaining the Cut were negligent and constitute a taking and conversion of their property. Plaintiffs also assert other common-law claims and claims for violations of various state statutes and the Texas Constitution.[3]

By way of relief, Plaintiffs request that this Court issue a mandatory permanent injunction to fill in the Cut and wholly restore the coast at the expense of Defendants. Plaintiffs also seek actual damages in the amount of $730 million, which in their estimation, equals one dollar a day for every day of geological time that it took to create Bolivar Peninsula. (Literal Biblical interpretation would, of course, limit damages to $6.00). In addition, Plaintiffs seek gross damages of $100 million on the grounds that Defendants'

2. The cases that were consolidated into this one and to which this Order applies are: G–97–15, G–97–36, and G–97–147.

3. The Court is vague in its restatement of Plaintiffs' claims because Plaintiffs are vague in their own assertion of them despite a Court Order to clarify their Complaint. On September 13, 1996, the Court ordered the original Plaintiffs, the Gordons, to amend their Complaint to clarify their claims and specify exactly which claims were asserted against which Defendants. Plaintiffs filed a Second Amended Complaint on November 15, 1996 but failed to comply with the Court's order to specifically and clearly allege their claims. The Second Amended Complaint is substantially similar to the First Amended Complaint, and while it does specifically set forth some causes of action against some Defendants, it is largely a narrative history of what has happened to Plaintiffs' property and their efforts to protect it. While this information is factually and historically interesting, it is not legally relevant.

The scattershot nature of the Second Amended Complaint is reflected in the varied responses to it by the numerous Defendants via their dispositive motions. In their motions, Defendants identified various different causes of action that they each thought were being asserted against them, some of which were commonly identified by Defendants and some of which were not.

acts were knowingly and willfully done in conscious disregard of Plaintiffs' and the public's rights.

Before addressing itself to the issues now before it, the Court wishes to note that it wholeheartedly sympathizes with Plaintiffs. This Court has witnessed the erosion of the Texas coast and recognizes that it causes real damage and permanent loss. The Court also recognizes that a real remedy must somehow exist for this problem. Undoubtedly, something must be done to prevent the wholesale loss of public beaches and private property all along the coast.

■ However, while the Court feels strongly that action should be taken to alleviate the erosion crisis in this area, it is equally convinced that it, nor any other court, is the entity to formulate and take this action. Rather, the Court is of the firm opinion that the issues raised by this case are far more appropriate for resolution by Congress or agencies within the Executive Branch. (It is clearly too large a problem to be solved by a single state). It is for this reason that the Court finds that this case in its entirety involves a nonjusticiable political question. The political question doctrine functions as a protector of the concept of the separation of powers. In political question cases, "it is the relationship between the coordinate branches of the Federal Government, and not the federal judiciary's relationship to the States, which gives rise to the 'political question.'" *Baker v. Carr*, 369 U.S. 186, 210, 82 S.Ct. 691, 706, 7 L.Ed.2d 663 (1962). A number of characteristics identify a case as one involving a political question, such as:

a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker,* 369 U.S. at 217, 82 S.Ct. at 710. The case at hand bears several of these identifying characteristics, making it a controversy inappropriate for judicial resolution.

In the first instance, the Court could not decide this case without making an initial policy determination of a kind clearly for nonjudicial discretion. To decide this case, the Court would first have to decide whether Rollover Fish Pass should be filled in and closed. This decision is not one for the Court to make because it involves scientific, ecological, economic, and social issues that are wholly beyond the purview of the judiciary. The closing of the Pass could have innumerable impacts on various concerns on Bolivar Peninsula, such as wildlife protection, transportation, commerce, and recreation. The Court believes that the determination of whether these impacts should be made involves a policy decision that is better left to the discretion of the Legislative and Executive Branches. Significant scientific and economic studies would likely need to be conducted to determine the feasibility of closing Rollover Fish Pass, a fact which reinforces the Court's finding that the issues in this case are ones more appropriate for nonjudicial determination. Moreover, a decision in this case would require the Court to determine not only whether the Pass should be closed in the future but also whether, in the past, the Pass was permitted, dredged, and maintained not only in a legally sound manner but in a scientifically sound and socially responsible way. This determination would require a review and critique of policy decisions made by agencies of the Executive Branch as well as decisions made by state government entities. That such a critique of policy decisions would be required is reflected by Plaintiffs' own Second Amended Complaint. In this pleading, Plaintiffs complain about Defendants failure to implement sound public policy in order to prevent erosion. The Court is not inclined to review the policy decisions of specialized governmental entities and replace their decisions with ones of its own.

Moreover, this case is marked by a lack of judicially discoverable and manageable standards for resolving it. This fact is demonstrated by the nature of relief sought by Plaintiffs. In Plaintiffs' own words, what they seek is "a mandatory permanent injunction to fill in what is left of the so-called 'Cut,' that the coast be made wholly restored at the expense of the defendants." (Plaintiffs' Second Amended Complaint, p. 10). This request is utterly beyond the power and manageability of this Court. The injunctive relief sought by Plaintiffs would require the Court to engage in operational decisionmaking that is both beyond the Court's competence and constitutionally committed to the other branches of the Federal Government. *See Koohi v. United States,* 976 F.2d 1328, 1332 (9th Cir.1992) (discussing the judicial manageability of injunctive suits), *cert. denied,* 508 U.S. 960, 113 S.Ct. 2928, 124 L.Ed.2d 679 (1993). While the Court presides over a District by the sea, it is not endowed with the powers of Poseidon. It cannot control the tides, nor can it, on its own accord, order a major geologic change in the coastline of the state of Texas. The Court does not have the inclination, the capabilities, nor the power to discover, develop, and implement procedures for filling in Rollover Fish Pass. As discussed above, this decision would require serious scientific and economic study in addition to intense and judicially unmanageable physical work. The Federal Courts are simply not in the business of directing and overseeing massive geological construction projects. Therefore, the Court finds that the injunctive relief sought by Plaintiffs is neither judicially discoverable nor judicially manageable.

In addition to injunctive relief, Plaintiffs seek monetary damages, and the Court recognizes that damages are normally judicially manageable and nonintrusive into the business of the other branches. The damages sought in this case, however, are unique. Plaintiffs do not seek damages calculated to compensate them for any loss in the value of their property. Rather, they seek damages in the amount of one dollar for every day of geologic time that it took to create the Texas coast, or $730 million. It appears from this formula that what Plaintiffs actually seek is a turning back of the hands of time. Obviously, this Court does not have that power. Nor is it inclined to calculate and award damages for the passage of time. Regardless of whatever acts Defendants performed or failed to perform relating to Rollover Fish Pass, they are certainly not liable for erosion over all of time. The Court finds that although Plaintiffs do seek damages, a normally judicially manageable remedy, their request for damages is inextricably intertwined with their request for injunctive relief. They seek to not only stop erosion in the future but also make up for all erosion that has occurred on this part of the coast in the past. These tasks are simply not judicially manageable.

Furthermore, the Court could not undertake an independent resolution of this case without expressing a lack of the respect due the other branches of the Federal Government. As noted above, Rollover Fish Pass was dredged pursuant to a permit issued by the United States Army Corps of Engineers. In order to issue this permit, the Corps had to determine that the dredging of the Pass met certain standards and was an appropriate and feasible act to undertake. The Court's reevaluation of this decision now, over forty years later, would express a lack of respect for this Executive Branch agency and its expertise. Moreover, it appears that the Corps has taken a stance regarding the current status of Rollover Fish Pass. According to Plaintiff's Response to General Land Office's Motion to Dismiss, the Corps has refused to provide funds for erosion projects in the Rollover Pass area. The Corps does, however, dredge an area just north of Rollover Fish Pass every eighteen months in order to keep the Intercoastal Waterway free of obstruction. Thus, it appears to this Court that the Corps has evaluated the situation in Rollover Fish Pass and has chosen what it believes to be an appropriate course to follow. This Court is not inclined to second-guess the decision of the Corps and express a lack of respect for a coordinate branch of the Federal Government.

Plaintiffs argue that this case is not appropriate for the application of the political question doctrine because the doctrine is concerned with conflict between branches of the

Federal Government, and this case involves state issues and state agencies. The Court finds this argument unpersuasive. Although Plaintiffs have sued only state entities and one private party, there is ample evidence that Federal agencies have been and would need to be involved in resolving the dispute now before the Court. The fact that Plaintiffs did not sue any Federal agencies is not dispositive. Plaintiffs admit in their own Complaint that the County of Galveston has asked the Governor to request Federal emergency aid and to have the area declared a Federal disaster area. This fact alone demonstrates the necessity of the participation of Federal agencies in solving the erosion problem on Bolivar Peninsula. Moreover, as stated above, the Corps of Engineers appears to play some kind of role in the oversight or maintenance of the Rollover Fish Pass area, further demonstrating a Federal nonjudicial presence in this dispute. Finally, Plaintiffs complain that they have not received satisfaction from the state entities they have approached about the erosion of their property and bemoan the lack of success of many of the state-directed projects. This dissatisfaction with the state government suggests to this Court that perhaps it is time that Plaintiffs approach the Federal government, through their elected representatives, for some relief. The Court is of the opinion that the solution may indeed need to come from the Federal government, but not from the Judicial Branch. The issues in this case are simply beyond the expertise and the power of the Court and are better handled by the Legislative and Executive Branches. It is for this reason, and for those discussed above, that the Court finds that this case involves a nonjusticiable political question.

The Court notes that even if it were to find that this case involved justiciable issues, Plaintiffs' causes of action would likely be barred by a multitude of defenses, including sovereign immunity, Eleventh Amendment immunity, and statutes of limitation. One of the Defendants in this case is the State of Texas, and several others are state agencies, and all of them may be immune from suit under principles of sovereign immunity or under the Eleventh Amendment. Additionally, the principal act of which Plaintiffs complain, the dredging of the Pass, occurred in 1954, over forty years ago, and Plaintiffs admit in their pleadings that they have participated in efforts to stop the erosion for over ten years. These facts suggest that many, if not virtually all of Plaintiffs' claims may be time-barred. Finally, the Court notes that some of Plaintiffs' claims appear to be simply improperly asserted either because a certain Defendant owes them no duty under any law or because the Texas Constitution or other law affords them no right of action. The Court points out these flaws in Plaintiffs' case not to belittle their claims but simply to emphasize the inappropriateness of these issues for judicial resolution.

For the reasons set forth above, Defendants State of Texas and Texas Parks and Wildlife Department's Motion to Dismiss; Defendant Texas General Land Office's Motion to Dismiss; Defendant County of Galveston's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment; Defendant Gulf Coast Rod, Reel and Gun Club's Motion for Summary Judgment; and Defendant Texas Parks and Wildlife Department's Motion to Dismiss Claims of Steinhagen Plaintiffs and Polk Intervenors are all **GRANTED**. Each and every claim asserted herein by each and every Plaintiff and Intervenor is **DISMISSED WITH PREJUDICE**. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file nothing further on these issues in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course. Alternatively, Plaintiffs and Intervenors are respectfully encouraged to seek appropriate relief from Congress or the Executive Branch.

**IT IS SO ORDERED.**

### FINAL JUDGMENT

For the reasons set forth in the Order issued by the Court this date, Defendants State of Texas and Texas Parks and Wildlife

Department's Motion to Dismiss; Defendant Texas General Land Office's Motion to Dismiss; Defendant County of Galveston's Motion to Dismiss, or In the Alternative, Motion for Summary Judgment; Defendant Gulf Coast Rod, Reel and Gun Club's Motion for Summary Judgment; and Defendant Texas Parks and Wildlife Department's Motion to Dismiss Claims of Steinhagen Plaintiffs and Polk Intervenors are **GRANTED.** Each and every claim asserted herein by each and every Plaintiff and Intervenor is **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date.

**THIS IS A FINAL JUDGMENT.**