REVISED MARCH 14, 2003

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-41208

_____

VICTOR HUGO SALDANO

Petitioner - Appellee

JANIE COCKRELL, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, INSTITUTIONAL DIVISION

Respondent - Appellee

v.

TOM O'CONNELL, Collin County Criminal District Attorney

Movant - Appellant

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

February 18, 2003

Before KING, Chief Judge, and SMITH and DENNIS, Circuit Judges.

KING, Chief Judge:

In 1996, Victor Hugo Saldano was convicted and sentenced to
death for the capital murder of Paul King.  On appeal, we are
asked to resolve whether the district court erred in holding that
the Collin County District Attorney's application for intervention
presented it with non-justiciable political questions.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Collin County District Attorney's Office ("District Attorney") represented the State of Texas in this case at trial and on Saldano's direct appeal of his death sentence to the Texas Court of Criminal Appeals. During the punishment phase of the trial, the District Attorney called clinical psychologist Dr. Walter Quijano to testify as an expert regarding Saldano's potential for being a continuing threat to society. Dr. Quijano identified twenty-four unweighted "factors" that he deemed appropriate to the jury's sentencing determination. One of Dr. Quijano's statistical factors was race. As to this factor, Dr. Quijano correlated the over-representation of African Americans and Hispanics in the prison population (when compared to their percentages of the general population) with an increased susceptibility for "future dangerousness" within these races. Because Saldano is from Argentina, Dr. Quijano further testified that Saldano would be considered Hispanic. During closing arguments, the District Attorney reminded the jury to rely on the twenty-four factors outlined by Dr. Quijano in determining "future dangerousness" and to take the formula of twenty-four factors and "plug it in." Saldano's trial counsel failed to object to Dr. Quijano's testimony or the evidence and argument offered by the District Attorney regarding race.

The jury ultimately found that Saldano presented a continuing threat to society (by answering "yes" to the "future dangerousness" special issue question) and Saldano was thereafter sentenced to death by the trial court. On direct appeal to the Texas Court of Criminal Appeals, Saldano challenged the admissibility of Dr. Quijano's testimony. In response, the District Attorney argued that Saldano was procedurally barred from raising this claim. The Texas Court of Criminal Appeals agreed with the District Attorney and affirmed the judgment of the trial court.

On writ of certiorari to the United States Supreme Court, however, the Attorney General of Texas ("Attorney General") took over the representation of the State. The Attorney General confessed error and declined to raise the procedural bar defense previously argued by the District Attorney.[1] The Supreme Court thereafter vacated the judgment of the Texas Court of Criminal Appeals and remanded to the court for further disposition in light of the confession of error by the State. Saldano v. Texas, 530 U.S. 1212 (2000).

On remand to the Texas Court of Criminal Appeals, the Attorney General again confessed error in the trial court. The Texas Court of Criminal Appeals, however, invited the District Attorney to file a brief and to share in oral argument. The District Attorney again

---

[1] The District Attorney tendered to the Supreme Court a brief in opposition to the Attorney General; however, the Supreme Court returned it unfiled and denied the District Attorney leave to file a brief amicus curiae.

argued that any error had been waived by Saldano. The court agreed and affirmed the judgment of the trial court. In so doing, it found that evidence regarding the correlation of race and recidivism did <u>not</u> constitute fundamental error and that "the State's confession of error in the Supreme Court of the United States is contrary to our state's procedural law for presenting a claim on appeal, as well as the Supreme Court's enforcement of such procedural law when it is presented with equal-protection claims." <u>Saldano v. State</u>, 70 S.W.3d 873, 891 (Tex. Crim. App. 2002).

Saldano subsequently filed a petition for writ of habeas corpus in federal district court contending that the District Attorney's use of race as a factor in the jury's evaluation of future dangerousness constitutes fundamental error requiring reversal of his death sentence. In response, Respondent Janie Cockrell, through the Attorney General, acknowledged that "the infusion of race as a factor for the jury to weigh in making its determination violated [Saldano's] constitutional right to be sentenced without regard to the color of his skin," and "seriously undermined the fairness, integrity, or public reputation of the judicial process." The Attorney General did not raise, as a defense, that Saldano had waived this alleged error. The District Attorney moved to file a brief as <u>amicus curiae</u>; this motion was granted by the district court. While acknowledging that the Attorney General is the proper respondent for the State in this civil case, the District Attorney also filed an application to

4

intervene as of right. On July 16, 2002, the district court held that the District Attorney's application for intervention presented it with non-justiciable political questions. The District Attorney appeals this order.

### JURISDICTION and STANDARD OF REVIEW

Although the district court here styled its order as a denial of the District Attorney's application for intervention, it, in fact, did not opine on the merits of the application because it, sua sponte, found jurisdiction lacking. See, e.g., Gordon v. Texas, 153 F.3d 190, 196 (5th Cir. 1998)("We do not interpret the district court's opinion, however, to be a formal disposition of the plaintiffs' cases on these other bases. The court held that the plaintiffs' claims were nonjusticiable under the political question doctrine. Having concluded that it lacked the power to adjudicate the plaintiffs' claims, logically the district court could not then proceed to address the merits of the other defenses raised by the defendants."). Instead, the district court specifically held that it had no jurisdiction to review the merits of the application. The Supreme Court has ruled that an "abstention-based stay order [i]s appealable as a 'final decision' under [28 U.S.C.] § 1291 because it put[s] the litigants effectively out of court, and because its effect [i]s precisely to surrender jurisdiction of a federal suit." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 713 (1996) (internal quotations and

5

citations omitted). Likewise, as the district court order here concluding that it had no jurisdiction to review the District Attorney's application for intervention "put the litigant[] effectively out of court," id., the order "conclusively determine[d] an issue that is separate from the merits," id. at 714, and is thus a "final decision" under § 1291.

The district court's order regarding its lack of jurisdiction to review the District Attorney's application for intervention is a "final decision" for purposes of this court having jurisdiction to hear the appeal under 28 U.S.C. § 1291. The relevant question of law that this court must review de novo, therefore, is whether the district court properly held that the District Attorney's application for intervention presents non-justiciable political questions. See Guillory v. Cain, 303 F.3d 647, 650 (5th Cir. 2002) (holding that questions of law are reviewed de novo).

**ANALYSIS OF THE DISTRICT COURT'S ORDER and THE POLITICAL QUESTION DOCTRINE**

The district court sua sponte held that this case presents political questions, stating that:

> Although the movant frames the issue as controlled by
> Fed. R. Civ. P. 24, whether to allow intervention under
> that rule cannot be separated from a political question.
> In other words, the question of whether a district
> attorney, who originally represented the state in
> criminal litigation, has a sufficient interest in the
> death sentence obtained in that litigation to allow him
> to intervene in collateral litigation about the
> constitutionality of the sentencing procedures employed

6

in that litigation is inextricably bound up with the question of whether the State of Texas would prefer to preclude the federal court from considering the merits of Saldano's constitutional claim, or would instead prefer to allow the federal court to address the claim. The court must abstain from deciding political questions. See Public Citizen v. Bomer, 115 F. Supp. 2d 743, 746 (W.D. Tex. 2000), aff'd on other grounds, 274 F.3d 212 (5th Cir. 2001); see also Baker v. Wade, 769 F.2d 289, 299 (5th Cir. 1985), cert. denied, 478 U.S. 1022 (1986) (Rubin, J., dissenting).

Upon review, we conclude that the questions presented by the District Attorney's application for intervention are justiciable.

Whether an issue presents a non-justiciable political question cannot be determined by a precise formula. The doctrine is primarily rooted in the constitutional separation of powers among the three branches of the federal government. See Powell v. McCormack, 395 U.S. 486, 518 (1969); Baker v. Carr, 369 U.S. 186, 210 (1962). As observed by the Supreme Court in Baker v. Carr, each of the varying formulations which may be used to describe a non-justiciable political question "has one or more elements which identify [the question] as essentially a function of the separation of powers." Id. at 217. The Baker Court outlined the scope of the political question doctrine by reviewing several of these varying formulations:

Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial

7

> discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

Id. Threading the issues raised by the District Attorney's application for intervention through the prism of non-justiciable formulations provided for in Baker v. Carr reveals that the issues here are extricable from those barred from justiciability by the doctrine.

The dominant consideration in any political question inquiry is whether there is a "textually demonstrable constitutional commitment of the issue to a coordinate political department." Id.; see also Nixon v. United States, 506 U.S. 224, 252-53 (1993) ("Whatever considerations feature most prominently in a particular case, the political question doctrine is essentially a function of the separation of powers, existing to restrain courts from inappropriate interference in the business of the other branches of the Government, and deriving in large part from prudential concerns about the respect we owe the political departments.") (Souter, J., concurring) (internal citations and quotations omitted). Here, the issues raised by the District Attorney's application for intervention are not issues that have been constitutionally committed to coordinate branches or political departments. Cf. Dickson v. Ford, 521 F.2d 234, 235-36 (5th Cir. 1975) (per curiam)

8

(dismissing as non-justiciable an Establishment Clause challenge to a statute authorizing $2.2 billion of emergency military assistance to the State of Israel because authority for such action rested in a coordinate branch of the federal government).  Further, this application for intervention does not present the district court with a situation where it will lack judicially discoverable and manageable standards for resolving the intervention question because the federal rules and case law governing intervention will serve as the benchmark for a disposition of the District Attorney's application.  See generally Nixon v. United States, 506 U.S. 224, 228-29 (1993) (stating that these two concepts (the textual commitment concept and the judicially discoverable and manageable standards concept) are "not completely separate," and that "the lack of judicially manageable standards may strengthen the conclusion that there is a textually demonstrable commitment to a coordinate branch"); Chisom v. Roemer, 501 U.S. 380, 402-03 (1991) (rejecting claim that vote dilution case was non-justiciable because there are no judicially manageable standards for deciding vote dilution);  United States v. Munoz-Flores, 495 U.S. 385, 395 (1990) ("The Government also suggests that a second Baker factor justifies our finding that this case is nonjusticiable: The Court could not fashion 'judicially manageable standards' for determining either whether a bill is 'for raising Revenue' or where a bill 'originates.'  We do not agree . . . To be sure, the courts must develop standards for making the revenue and origination

9

determinations."); cf. Trujillo-Hernandez v. Farrell, 503 F.2d 954, 955 (5th Cir. 1974) ("The question for decision is nonjusticiable. The naturalization power is conferred on Congress in Article I, Section 8, along with war power . . . It has never been supposed that there are any judicially manageable standards for reviewing the conduct of our nation's foreign relations by the other two branches of the federal government."). Nor does the application for intervention present the district court with a situation where it will be required to make a "policy" determination of the kind clearly for non-judicial discretion simply because the determination may touch on political issues. See, e.g., League of United Latin Am. Citizens v. Clements, 999 F.2d 831, 838 (5th Cir. 1993) (en banc) (reviewing the "political" dispute challenging the single-district system of electing state trial judges in Texas in a voting rights action involving the Attorney General of Texas and the Texas Judicial Districts Board).

Additionally, as demonstrated by the case law, an important overlay exists to the formulations discussed in Baker v. Carr. The parameters of the political question doctrine generally extend to cover the federal judiciary's relationship to the federal government and not the federal judiciary's relationship to the States. See Elrod v. Burns, 427 U.S. 347, 351 (1976) ("A question presented to this Court for decision is properly deemed political when its resolution is committed by the Constitution to a branch of the Federal Government other than this Court. Thus, 'it is the

10

relationship between the judiciary and the coordinate branches of the Federal Government, and not the federal judiciary's relationship to the States, which gives rise to the political question.' That matters related to a State's, or even the Federal Government's elective process are implicated by this Court's resolution of a question is not sufficient to justify our withholding decision of the question.") (quoting Baker v. Carr, 369 U.S. 186, 210 (1962)) (emphasis added). Here, it is undisputed that there is simply no question that presents a conflict between the federal judiciary and a coordinate branch of the federal government.

In Gordon v. State, 153 F.3d 190 (5th Cir. 1998), this court reversed the district court's holding that issues relating to the erosion of beachfront property presented non-justiciable political questions. Id. at 196. There, the plaintiff property owners filed suit in federal district court against the Gulf Coast Rod, Reel and Gun Club, the State of Texas, and various state agencies, alleging that the defendants negligently constructed, dredged, and maintained the Rollover Fish Pass (an easement located in Galveston County that had been granted to the State of Texas by the Gulf Coast Rod, Reel and Gun sportsmen's club). Id. They sought an injunction ordering the State to fill in the Pass and to pay money damages. Id. The district court held that the issues were "far more appropriate for resolution by Congress or agencies within the Executive Branch" because the case presented policy decisions far

11

afield of the court's practical capacities.  Gordon v. Texas, 965 F. Supp. 913, 916 (S.D. Tex. 1997), rev'd, 153 F.3d 190 (5th Cir. 1998).  Disagreeing, this court concluded that the district court erroneously analyzed the political question issue.

In so concluding, we stated that "it is fair to say that, Guaranty Clause cases aside, the potential for a clash between a federal court and other branches of the federal government is fundamental to the existence of a political question; a simple conflict between a federal court and state agencies does not implicate the doctrine."  Gordon, 153 F.3d at 194 (emphasis in original).[2]  Because "the plaintiffs [there] ha[d] requested no action be taken by any unit of the federal government," id., we held that "the district court erred when it dismissed the plaintiffs' claims as nonjusticiable political questions."  Id. at 196.  Our reasons for disagreeing with the district court's conclusion regarding the application of the political question doctrine in Gordon similarly apply to the facts of this case.

In sum, we see nothing about the District Attorney's application that removes it from the competence of the judiciary.  The reasons that supported the justiciability of challenges to state legislative districts, Baker, 369 U.S. at 234-37, as well as state districting decisions relating to the election of members of

_____

[2]    The district court did not base its political question holding on the Guaranty Clause and the District Attorney, on appeal, does not contend that this case raises issues implicating the Guaranty Clause.

12

Congress, <u>Karcher v. Daggett</u>, 462 U.S. 725 (1983), as well as the constitutionality of apportionment schemes, <u>United States Dept. of Commerce v. Montana</u>, 503 U.S. 442, 458 (1992), as well as landowner suits against various Texas agencies, <u>Gordon</u>, 153 F.3d at 193, likewise support justiciability of the "political" issues presented by the resolution of the District Attorney's application for intervention.  The district court's "alternative" holding in <u>Public Citizen v. Bomer</u>, 115 F. Supp. 2d 743 (W.D. Tex. 2000), <u>aff'd on other grounds</u>, 274 F.3d 212 (5th Cir. 2001), and a statement that is not necessary to the reasoning of the dissent in <u>Baker v. Wade</u>, 769 F.2d 289, 299 (5th Cir. 2001) (en banc) (Rubin, J., dissenting) – both relied on by the district court to support its determination that the District Attorney's application presents it with non-justiciable political questions – do not persuade us otherwise.

**CONCLUSION**

We REVERSE the district court's order holding that the political question doctrine prevents it from considering the merits of the District Attorney's application to intervene in this case and REMAND the application to the district court for disposition on the merits.