Marvin NORWOOD et al., Plaintiffs,

v.

RAYTHEON COMPANY, Defendant.

Joachin–Christian Gummich, Plaintiff,

v.

Lucent Technologies, Inc., Defendant.

Erwin Bast et al., Plaintiffs,

v.

Raytheon Company et al., Defendants.

No. EP–04–CA–127 PRM.

United States District Court,
W.D. Texas,
El Paso Division.

Sept. 18, 2006.

See, also,237 F.R.D. 581.

598

Lyle W. Cook, William A. Kershaw, Kershaw, Cutter & Ratinoff, LLP, Sacramento, CA, for Plaintiffs.

Carole A. Cheney, Joel Blanchet, Kevin T. Van Wart, Michael Dierkes, Kirkland, Ellis, Chicago, IL, Mark N. Osborn, Mark N. Osborn, Kemp Smith LLP, Mitzi T. Shannon, Kemp, Smith, Duncan & Hammond, P.C., El Paso, TX, Charles F. Rysavy, J. Wylie Donald, McCarter & English, LLP, Newark, NJ, Heather Lamberg Kafele, Thomas S. Martin, Shearman & Sterling, Raymond B. Biagini, McKenna Long & Aldridge LLP, Donald W. Fowler, Joe G. Hollingsworth, Shawn D. Bryant, William J. Cople, III, Spriggs & Hollingsworth, Washington, DC, Joanna Shally, Shearman & Sterling, New York City, for Defendants.

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

MARTINEZ, District Judge.

On this day, the Court considered: (1) Defendants Raytheon Company ("Raytheon"), Lucent Technologies, Inc. ("Lucent"), General Electric Company ("General Electric"), Honeywell International, Inc. ("Honeywell"), and ITT Industries, Inc. and ITT–Gilfillan, Inc.'s ("ITT") (collectively "Defendants") "Motion to Dismiss Pursuant to Rule 12(b)(1) and Memorandum in Support Thereof" ("Motion to Dismiss"), filed on May 6, 2004;[1] (2) Plaintiffs Marvin Norwood et al.'s ("Plaintiffs") "Consolidated Opposition to: [a] Defen-

---

1. Defendants also filed an "Appendix to Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1)" ("Appendix"). The Court will not consider the Appendix in its analysis, however, as to consider matters outside the pleadings would require the Court to consider Defendants' Motion to Dismiss as a summary judgment motion. *See Stewart v. Murphy,* 174 F.3d 530, 532–33 (5th Cir.1999) (citing FED. R. CIV. P. 12(b)) (holding that a motion to dismiss for failure to state a claim, in which the district court considered facts outside the pleadings, was properly treated as a motion for summary judgment). Furthermore, Defendants cited their Appendix only as support for propositions regarding: (1) the U.S. military's need for a radar system; (2) the inadequacies of the U.S. radar system in 1956; (3) the U.S. military's recognition of the potential hazards of ionizing radiation; (4) the German administrative review process for its servicemen's claims regarding injuries allegedly

dants' Motion to Dismiss Pursuant to Rule 12(b)(1); [b] Defendants' Motion to Dismiss All Claims Asserted by the Bund and All Medical Monitoring Claims; [c] Defendants' Joint Motion to Dismiss the Fraudulent Concealment (Count XI) and Civil Conspiracy (Count XII) Claims in Plaintiffs' Second Amendment [sic] Complaint; and [d] Joint Motion of ITT and Honeywell to Dismiss Putative Liability Issues Certification Class Action for Failure to State a Claim" ("Response"), filed on June 8, 2004; and (3) Defendants' "Reply in Support of Motion to Dismiss Pursuant to Rule 12(b)(1) and Memorandum in Support Thereof" ("Reply"), filed on June 24, 2004 in the above-captioned cause. In the instant Motion to Dismiss, Defendants ask the Court to dismiss Plaintiffs' claims as non-justiciable based on the act of state doctrine, or, alternatively, the political question doctrine. After due consideration, the Court is of the opinion that Defendants' Motion to Dismiss should be denied for the reasons set forth below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case concerns allegations that injuries were caused by radars manufactured, designed, and marketed by Defendants. It is a consolidation, pursuant to an Order issued by the Court on April 30, 2004, of a case removed to the Western District of Texas and assigned to the Court (the "Texas case"), and cases filed in Massachusetts and New Jersey state courts (the "Massachusetts case" and the "New Jersey case," respectively), which were removed to the respective federal district courts and then transferred to the Court. The Court issued an Order denying Plaintiffs' class certification motion on September 11, 2006; therefore, only the claims of the six named Plaintiffs are before the Court.

Plaintiffs Jack Cooper ("Cooper"), Erwin Bast ("Bast"), and Joan Fridriksson ("Fridriksson") assert claims pursuant to the Second Amended Original Petition, filed in the Texas case ("Bund Complaint") on April 19, 2004. Cooper served in the United States Army from 1964 to 1975. Bund Compl. ¶ 24. Bast was a radar mechanic in the German Army from 1957 to 1980. *Id.* ¶ 28. Fridriksson asserts claims individually and as executrix of the estate of her husband, Thor Fridriksson, who was a radar technician in the United States Army from 1955 to 1974. *Id.* ¶ 21. Plaintiff Joachim Christian Gummich ("Gummich") asserts claims pursuant to the Class Action Complaint filed in New Jersey state court on January 13, 2003 ("Crackau Complaint"). Gummich served in the German Army from 1966 to 1973, and trained both in Germany and the United States. Crackau Compl. ¶¶ 80–81. Plaintiffs Marvin Norwood ("Mr.Norwood") and Carolyn Norwood (collectively "the Norwoods") assert claims pursuant to the Amended Class Action Complaint filed in Massachusetts state court ("Vietor Complaint"). Mr. Norwood served in the United States Army from 1966 to 1970. Vietor Compl. ¶ 140.

Plaintiffs allege physical injuries resulting from exposure during military service to x-ray (or ionizing) radiation emitted by Defendants' radars. Plaintiffs allege that Defendants, comprised of several designers, manufacturers, and marketers of radar equipment, (1) did not adequately

---

caused by radiation exposure; and (5) an unpublished plurality opinion of the Supreme Court regarding the relative importance of the *Baker* test factors. The foregoing topics are, at best, tangential to the applicability of the political question doctrine and the act of state doctrine to Plaintiffs' claims, and any underlying facts contained in Defendants' Appendix would not alter the Court's analysis.

shield transmitter tubes in their radars, thereby emitting dangerous amounts of ionizing radiation and (2) failed to adequately warn Plaintiffs of health risks associated with radiation exposure. Bund Compl. ¶¶ 46, 52–55; Crackau Compl. ¶¶ 4–5; Vietor Compl. ¶¶ 2–3. Consequently, Plaintiffs assert the following causes of action against Defendants: (1) in the Bund Complaint, negligence, breach of express and implied warranties, strict products liability, fraudulent concealment, civil conspiracy,[2] and wrongful death, Bund Compl. ¶¶ 211–36, 240–46, 252–57, 265–85; (2) in the Crackau Complaint, strict products liability, negligence, failure to warn, defective design, and fraudulent concealment, Crackan Compl. ¶¶ 121–63; and (3) in the Vietor Complaint, breach of express and implied warranties, negligence, unfair or deceptive acts and practices in violation of state law, and wrongful death, Vietor Compl. ¶¶ 171–231.

Because Plaintiffs allege claims based on radiation exposure during service in the armies of the United States and Germany, Defendants argue that the Court must decline to hear the case. Defendants claim that the act of state doctrine and the political question doctrine require the Court to refrain from ruling on Plaintiffs' claims. After considering Plaintiffs' procedural objection to Defendants' Motion to Dismiss, the Court will analyze the potential applicability of the act of state doctrine and the political question doctrine.

## II. LEGAL ANALYSIS

### A. Procedural Objection

Defendants style the instant Motion to Dismiss as a motion brought pursuant to Federal Rule of Civil Procedure 12 ("Rule 12"), specifically, Rule 12(b)(1), claiming the Court has a "lack of jurisdiction over the subject matter." FED. R. CIV. P. 12(b)(1). The Supreme Court, however, has "held that dismissals for lack of a justiciable question are properly treated as dismissals for failure to state a claim." *Hanson v. Town of Flower Mound,* 679 F.2d 497, 503 n. 8 (5th Cir.1982) (citing *Baker v. Carr,* 369 U.S. 186, 196, 198–204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). "[T]he basis of the [act of state] doctrine is not jurisdictional but prudential." *Callejo v. Bancomer, S.A.,* 764 F.2d 1101, 1113 (5th Cir.1985). Therefore, the Court will analyze Defendants' Motion to Dismiss as asserting that Plaintiffs fail to state a claim on which relief can be granted, pursuant to Rule 12(b)(6).

Plaintiffs claim that Defendants' Motion to Dismiss is barred at this stage of the case by Rule 12(g), which requires that once a party makes a Rule 12 motion, it must concurrently make all of its Rule 12 motions then available, subject to the exceptions in Rule 12(h). Pls.' Resp. 4. There is no argument that Defendants were previously unaware of the possible application of the act of state doctrine or the political question doctrine to Plaintiffs' claims. Plaintiffs argue that pursuant to the Rule 12(h) exceptions, the instant Rule 12(b)(6) motion may only be brought in a Rule 7(a) pleading, a motion for judgment on the pleadings, or at trial, as Defendants have previously filed motions under Rule 12(b)(6) and (7).[3] FED. R. CIV. P. 12(h)(2); Pls.' Resp. 4.

---

**2.** The Court notes that a currently pending motion seeks the dismissal of Plaintiffs' fraudulent concealment and civil conspiracy claims. The Court will address the merits of those arguments at a later time.

**3.** In an Order issued April 5, 2004, the Court held that a forum non conveniens motion is not properly considered a Rule 12 motion for purposes of the Rule 12(g) consolidation requirement. Therefore, any forum non conve-

On October 20, 2003, Defendants ITT, General Electric, and Honeywell filed separate Rule 12(b)(6) motions in the Texas case; ITT and General Electric also filed Rule 12(e) motions in the Texas case. The Court granted the motions for a more definite statement and denied the motions to dismiss for failure to state a claim on April 5, 2004. On November 5, 2003, in the Texas case, all Defendants filed a Rule 12(b)(7) motion to dismiss for failure to join an indispensable party, the German government, which the Court denied without prejudice on March 15, 2005. In the New Jersey case, Lucent filed a motion to transfer pursuant to 28 U.S.C. § 1404(a) and a Rule 12(b)(7) motion to dismiss for failure to join an indispensable party. The New Jersey district court did not rule on Lucent's Rule 12 motion because it granted Lucent's motion to transfer. In the Massachusetts case, Raytheon filed a motion to transfer, or in the alternative, to dismiss or stay the action pending resolution of the Texas case; Raytheon's motion to transfer was granted. The Court notes that some courts have found that the filing of a motion for transfer of venue triggers the Rule 12(g) consolidation requirement. *See* WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 1386 (2004)("The prohibition in Federal Rule 12(g) against successive motions expressly covers only motions under 'this rule,' which, of course, means motions authorized by Rule 12 ... although there is some limited authority to the contrary, primarily with regard to motions for transfer of venue and forum non conveniens."). The Court, however, will follow the language of Rule 12(g) and will not hold that Raytheon's previously filed motion to transfer bars its assertion of the instant Motion to Dismiss.

Because the Court finds that Raytheon's motion to transfer does not prohibit its instant Rule 12 motion against the Norwoods, the Court further concludes that the interests of judicial economy warrant the Court's consideration of Defendants' Motion to Dismiss as it applies to the claims of all Plaintiffs. "This required consolidation of defenses and objections in a Rule 12 motion is salutary in that it works against piecemeal consideration of a case." FED. R. CIV. P. 12(g) advisory committee notes to 1966 amendment. To consider only Raytheon's motion to dismiss the Norwoods' claims would yield the opposite of the consolidation requirement's intended effect. The Court notes that even if it declined to consider Defendants' justiciability motion as to the claims of the Texas and New Jersey Plaintiffs at this time, Rule 12(h)(2) would permit Defendants to bring a similar motion at a later date. Therefore, the Court will analyze the substance of the instant Motion to Dismiss as to all parties. The Court notes at the outset that motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir.1986).

### B. Act of State Doctrine

■ The essential principle of the act of state doctrine is that "the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory." *Underhill v. Hernandez*, 168 U.S. 250, 252, 18 S.Ct. 83, 42 L.Ed. 456 (1897). "[T]he act of state doctrine applies only when the dispute implicates the legitimacy of public acts undertaken by a sovereign nation." *Af–Cap Inc. v. Republic of Congo*, 383 F.3d 361, 372 n. 14 (5th Cir.2004) (citing *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964); *Callejo*,

niens motions filed by Defendants will be not be considered in the Court's analysis.

764 F.2d at 1112–24). Defendants argue that the German Plaintiffs' claims [4] would necessarily require the Court to "scrutinize and second-guess the official decisions and acts of the German military and government relating to its radiation safety program for military radar systems between 1958 and 1994" and that such actions by the Court are prohibited by the act of state doctrine. Defs.' Mot. to Dismiss 13.

■ The Supreme Court outlined the act of state doctrine, stating: "The act of state doctrine does not establish an exception for cases and controversies that may embarrass foreign governments, but merely requires that, in the process of deciding, the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid." *W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp., Int'l,* 493 U.S. 400, 409, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990). The German Plaintiffs' claims in no way require the Court to question the validity or legitimacy of any act undertaken by the German government. Defendants state that "the initial decision of the German government to acquire and field particular radar systems is a sovereign act that goes to the heart of German national security." Defs.' Mot. to Dismiss 15. The German Plaintiffs' claims, however, do not challenge the right of the German government to select and purchase the radar systems at issue for its military, but rather, Defendants' design and manufacture of said radar systems. Defendants additionally argue that the "training and military protocols" of the German government are relevant to the German Plaintiffs' claims. *Id.* at 16. The claims of the German Plaintiffs, however, do not

require the Court to determine the *validity* of the German army's procedures.

Finally, Defendants argue that the Court will have to "step in, reconsider, and supplant resolutions reached by the German administrative process" that reviews the claims presented to the German government by its service members who were allegedly injured by radars. *Id.* at 17. Since the Court denied class certification, only the claims of the named Plaintiffs are currently before the Court. Neither Plaintiffs nor Defendants have stated that the named German Plaintiffs presented claims to the German government. Therefore, the resolutions of the administrative process will concern only claims of German servicemen not party to the instant suits, and the Court will have no reason to reconsider or supplant those resolutions. In conclusion, the Court finds that the act of state doctrine "has no application to the present case because the validity of no foreign sovereign act is at issue." *Kirkpatrick,* 493 U.S. at 409–10, 110 S.Ct. 701.

### C. Political Question Doctrine

■ Defendants also argue that the Court must refrain from hearing the claims of all Plaintiffs, German and American, because of the political question doctrine. Defs.' Mot. to Dismiss 13. The Supreme Court has articulated six grounds that would require a district court to dismiss a case on the grounds of non-justiciability due to a political question:

> Prominent on the surface of any case held to involve a political question is found [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3]

---

**4.** Defendants present arguments supporting the applicability of the act of state doctrine to the claims of the German Plaintiffs only, as the claims of the American Plaintiffs do not involve radars procured by the German government.

the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr,* 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). A court should not decline to hear a claim due to the existence of a political question "[u]nless one of these formulations is inextricable from the case at bar." *Id.* Furthermore, political question analysis requires "discriminating inquiry into the precise facts and posture of the particular case." *Id.* The Court will examine each of the six grounds to determine if Plaintiffs' claims must be dismissed due to the political question doctrine.

1. *Textually Demonstrable Constitutional Commitment to Political Department*

■ "The dominant consideration in any political question inquiry is whether there is a textually demonstrable constitutional commitment of the issue to a coordinate political department." *Saldano v. O'Connell,* 322 F.3d 365, 369 (5th Cir.2003) (internal quotation omitted). Defendants argue that "[t]he deployment and use of military equipment raises non-judiciable political questions constitutionally committed to the political branches." Defs.' Mot. to Dismiss 22. Defendants state that allowing this case to proceed will require the Court to "stand in judgment over the strategic decisions not only of the U.S. military, but those of the German military as well." *Id.* at 24.

As for Plaintiffs' claims stemming from exposure to Defendants' radars during service in the United States military, the very existence of the government contractor defense in federal common law demonstrates that claims by United States servicemen against military contractors are not necessarily barred by the political question doctrine. *See, e.g., Boyle v. United Techs. Corp.,* 487 U.S. 500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988) (setting forth the elements of the government contractor defense to products liability claims brought under state law). The government contractor defense allows a court to consider claims brought against military contractors, while still preventing the court from scrutinizing "the exercise of discretion by government officers in the selection of the appropriate design for military equipment to be used by our Armed Forces." *Bailey v. McDonnell Douglas Corp.,* 989 F.2d 794, 797 (5th Cir.1993) (internal quotations omitted).

Defendants cite cases in which "[t]he political question doctrine has been applied ... to damage claims against defense contractors for wrongful death and personal injuries." Defs.' Mot. to Dismiss 20. One case involves an action brought against the United States as well as twelve defense contractors by families of passengers and crew aboard an airliner shot down by missile fire from the *USS Vincennes. Nejad v. United States,* 724 F.Supp. 753 (C.D.Cal. 1989). The district court dismissed the action based on the state secrets privilege as well as the political question doctrine, stating that "courts lack standards with which to judge whether reasonable care was taken to achieve tactical objectives in combat while minimizing injury and loss of life." *Id.* at 755. The Ninth Circuit, however, when presented with claims brought in an action in a different district court by heirs of passengers aboard the same airliner, found that the political question doc-

trine did not bar the plaintiffs' claims against the United States or the defense contractors. *Koohi v. United States,* 976 F.2d 1328, 1332 (9th Cir.1992). The court stated that "because the plaintiffs seek only damages, the granting of relief will not draw the federal courts into conflict with the executive branch." *Id.*

Defendants also bring to the Court's attention a district court's dismissal of a claim, brought by the estate of a sailor killed by Iraqi fire, against designers, manufacturers, testers, and marketers of an anti-missile system and weapons systems employed on the *USS Stark. Zuckerbraun v. Gen. Dynamics Corp.,* 755 F.Supp. 1134 (D.Conn.1990), *aff'd on other grounds,* 935 F.2d 544 (2d Cir.1991).[5] The district court granted the defendants' motion to dismiss based on the state secrets doctrine as well as the political question doctrine, stating that the plaintiff's claims would require the court to "examine the appropriateness of the rules of engagement and the standing orders" as well as "evaluate the appropriateness of the reaction of the *USS Stark* crew to the May 17, 1987 incident." *Id.* at 1142.

Finally, Defendants cite a case involving claims brought by family members of Marines killed during the Persian Gulf War by friendly fire; the district court dismissed the claims based on the political question doctrine, stating that proof of the plaintiffs' case "requires inquiry into other possible causes of the friendly fire incident.... Plaintiffs' claims necessarily require inquiry into military strategy and, more specifically, orders to A–10 pilots and ground troops." *Bentzlin v. Hughes Aircraft Co.,* 833 F.Supp. 1486, 1497 (C.D.Cal. 1993). The court found it important that the "Marines' deaths occurred during the

war. The conduct of such affairs are constitutionally committed to the Executive Branch under the President as Commander–in–Chief." *Id.*

Plaintiffs' claims involve radar systems acquired during the Cold War, but American military strategy is not implicated by Plaintiffs' claims on the face of the pleadings. Plaintiffs claim that Defendants failed to adequately shield the transmitter tubes in the radars and failed to warn Plaintiffs of the dangers associated with the radiation emitted by the radars. As distinguished from the cases cited by Defendants, the cause-in-fact of any Plaintiff's injury is uncertain. Should Plaintiffs successfully prove that radar exposure caused their injuries, the government contractor defense will likely prevent any scrutiny by the Court of the United States Armed Forces' acquisition and use of the radar systems. Furthermore, unlike the foregoing cases cited by Defendants, any analysis by the Court of the American military's use of the radar systems would not involve inquiries into rules of engagement, reactions of United States servicemen during combat, or any information that Defendants contend is protected by the state secrets privilege.

As for the claims involving the radar systems acquired and used by the German military, Defendants argue that it was the "political branches of the U.S. government [that] made the initial foreign policy and national security determinations ... to make [high-power radar] systems available to the German military." Defs.' Mot. to Dismiss 24. However, Plaintiffs' claims that the radar systems at issue were defectively designed and manufactured by Defendants do not implicate any decision by the United States Government to make

---

5. The Second Circuit affirmed the district court's dismissal on the grounds of the state secrets privilege and did not reach the political cal question analysis. *Zuckerbraun v. Gen. Dynamics Corp.,* 935 F.2d 544, 548 n. 1 (2d Cir.1991).

such systems available to the German government. Plaintiffs' negligence and products liability claims against the manufacturers of the radar systems allegedly provided to the German government do not raise foreign policy questions clearly committed to the political branches of the American government. *Id.* at 8. Therefore, the Court cannot find that Plaintiffs' claims necessarily contain inextricable issues constitutionally committed to the political branches.

### 2. Lack of Judicially Manageable Standards

Defendants claim that "no judicially manageable standards exist to evaluate the propriety of the governmental decisions ... on whether to acquire particular military radar systems, how to operate and maintain them, and what training to provide to military personnel." *Id.* at 19. Plaintiffs assert negligence and products liability claims against equipment suppliers and request damages. The Court finds the Second Circuit's reasoning regarding the second *Baker* factor to be persuasive: "because the common law of tort provides clear and well-settled rules on which the district court can easily rely, this case does not require the court to render a decision in the absence of 'judicially discoverable and manageable standards.'" *Klinghoffer v. S.N.C. Achille Lauro Ed Altri–Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 49 (2d Cir.1991) (agreeing with district court's conclusion that political question doctrine did not bar a suit against the Palestine Liberation Organization ("PLO") stemming from the PLO's seizure of an Italian passenger liner and killing of a passenger).

Furthermore, the language quoted by Defendants in support of their argument that there are no judicially manageable standards that the Court can use to evalu-

ate Plaintiffs' personal injury tort claims comes from inapposite cases, one of which is no longer valid for the cited proposition. *See, e.g., Republic of the Philippines v. Marcos*, 818 F.2d 1473, 1489 (9th Cir.1987) (holding that no judicially manageable standards existed to "determine the legality of the actions of a foreign head of state, exercising dictatorial powers under a reign of martial law" because a dictator "is generally subject to no legal constraints"), *rev'd en banc*, 862 F.2d 1355, 1361 (9th Cir.1988) (holding that political question doctrine did not bar plaintiff's claims); *Aktepe v. United States*, 105 F.3d 1400, 1404 (11th Cir.1997) (holding that no judicially manageable standards existed, in a negligence action brought against the United States by crew members aboard a Turkish destroyer struck by missiles fired by an American naval carrier, to "determine how a reasonable military force would have conducted the [missile firing] drill"). Defendants quote language from a Supreme Court case holding that no judicially manageable standards existed by which a district court could evaluate "the appropriateness of the training, weaponry and orders of the Ohio National Guard" and "exercise a continuing judicial surveillance over the Guard to assure compliance with whatever training and operating procedures may be approved by that court." *Gilligan v. Morgan*, 413 U.S. 1, 5–6, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973) (internal quotations omitted). Unlike the request for injunctive relief in the *Gilligan* case, Plaintiffs' request for damages from defense contractors would in no way require judicial oversight of military decisions. Therefore, the Court concludes that judicially manageable standards exist for the resolution of Plaintiffs' claims.

### 3. The Remaining Baker Factors

As for the remaining *Baker* factors, the Court concludes that none apply to Plain-

tiffs' claims. Defendants state that the "decision to use a particular radar system for national defense certainly represents an initial policy decision clearly committed to the discretion of the political branches, thus implicating the third *Baker* factor [the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion, *Baker*, 369 U.S. at 217, 82 S.Ct. 691]." Defs.' Mot. to Dismiss 26. The Court understands the third *Baker* factor to require dismissal only when the claims presented would require a court to make an initial policy determination in order to decide the case. *See Gross v. German Found. Indus. Initiative*, 456 F.3d 363, 388–89 (3d Cir.2006) ("A political question under the third factor 'exists when, to resolve a dispute, the court must make a policy judgment of a legislative nature, rather than resolving the dispute through legal and factual analysis.' " (quoting *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 784 (9th Cir.2005))). Defendants have not identified an initial policy determination that the Court would have to make in order to resolve Plaintiffs' claims. Furthermore, the Court sees no potential for such a policy determination, given that Plaintiffs' claims are predicated on injuries allegedly caused by defective radars used by the American and German militaries during the latter half of the twentieth century.

"The fourth through sixth *Baker* factors appear to be relevant only if judicial resolution of a question would contradict prior decisions taken by a political branch in those limited contexts where such contradiction would seriously interfere with important governmental interests." *Kadic v. Karadzic*, 70 F.3d 232, 249 (2d Cir.1995). Defendants claim that the fourth *Baker* factor, "the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government," *Baker*, 369 U.S. at 217, 82 S.Ct. 691, is applicable to Plaintiffs' claims. Defs.' Mot. to Dismiss 26. Defendants argue that "a judicial decision calling into question the use of high-power radar systems ... would express a lack of respect due to the coordinate branches of government that made the decision to develop and utilize such systems." *Id.* Again, however, the Court does not believe that the judicial resolution of Plaintiffs' claims would necessarily implicate the decision of the United States government to use high-power radar systems.[6]

Plaintiffs allege that defense contractors failed to adequately design the radars and to adequately warn Plaintiffs about the dangers posed by the radars. If Plaintiffs succeed on their claims, the decision of the United States military to use the radars will not be questioned by the Court, as liability will lie with the defense contractors. Any alleged fault of the United States will be potentially implicated only by defenses that might be asserted by Defendants, and no party has argued that the United States military knew of and ignored the alleged dangers posed by the radar systems at issue. Furthermore, even should such evidence be presented for review to the Court, "[t]he Supreme Court has made clear that the federal courts are capable of reviewing military

---

6. The Court notes that claims similar to Plaintiffs' causes of action have been presented by servicemen to the German government through its administrative process. Defendants have not argued that the United States political branches have taken any action regarding the questions presented by Plaintiffs'

claims or the claims of the German servicemen. *Cf. Alperin v. Vatican Bank*, 410 F.3d 532, 556 (9th Cir.2005) ("Had the State Department expressed a view [on the merits of the pending case], that fact would certainly weigh in evaluating this fourth *Baker* formulation.").

decisions."[7] *Koohi,* 976 F.2d 1328, 1329 (9th Cir.1992). In sum, Defendants have presented no evidence that the resolution of Plaintiffs' claims against private defendants would result in the Court's expressing a lack of respect due to the political branches of the federal government.

Defendants do not argue that the fifth factor is applicable to Plaintiffs' claims, and the Court does not find that any "unusual need for unquestioning adherence to a political decision already made" exists. *Baker,* 369 U.S. at 217, 82 S.Ct. 691. Defendants do claim that the sixth *Baker* factor, "the potentiality of embarrassment from multifarious pronouncements by various departments on one question," *id.,* is relevant, arguing that "if the Court were to proceed with this matter, it would raise a serious potential for embarrassment from multifarious pronouncements on the same question." Defs.' Mot. to Dismiss 26. Defendants claim the Court should not "revisit the inherently discretionary determinations that have already been made" as to the acquisition and use of the radar systems by the German and United States armies. *Id.*

Defendants' broad proposition that a resolution of the American Plaintiffs' products liability and negligence actions against defense contractors could lead to multifarious pronouncements would apply to any tort claim brought by servicemen against defense contractors. In all such cases, the military would have made the initial decision to purchase the product in question, and would have established protocols for its use. The political question doctrine does not sweepingly bar all such claims.

As for the German Plaintiffs' claims, Defendants do not demonstrate how determining whether the radar systems used by the German army were defective would necessarily lead to "multifarious pronouncements by various departments on one question," *Baker,* 369 U.S. at 217, 82 S.Ct. 691, even if the United States did play a critical role in Germany's initial acquisition of the radar systems at issue. *See* Defs.' Mot. to Dismiss 9 ("Both the executive and the legislative branches of the United States government played key policy roles between 1958–1994 in the provision of [radar] equipment to Germany and other foreign allies."). The United States' aid in the German acquisition of the radar systems can certainly be seen as an implied pronouncement that the radar systems were acceptable for use. However, as discussed in the foregoing analysis, Plaintiffs claim that the manufacturers of the systems were negligent, that the systems were defective, and that Defendants fraudulently concealed the dangers posed by the systems. Claims for illness allegedly caused by radar exposure have been submitted to the German government, Defs.' Mot. to Dismiss 12, and Defendants have not presented any evidence that the United States government has issued any pronouncements regarding those claims. "No ongoing government negotiations, agreements, or settlements are on the horizon." *Alperin v. Vatican Bank,* 410 F.3d 532, 558 (9th Cir.2005) (holding the plaintiffs' claims against a foreign bank for losses suffered during World War II to be justiciable). Therefore, the Court finds that resolution of Plaintiffs' claims will not present the kinds of problems that the fourth, fifth and sixth *Baker* factors seek

---

**7.** After concluding that the plaintiffs' claims against the United States were justiciable, the *Koohi* Court noted that "it follows *a fortiori* that the action against the private defendants [military contractors] is as well. Indeed, we have found no Supreme Court or Court of Appeals decisions which have dismissed a suit brought against a private party on the basis of the political question doctrine." *Koohi,* 976 F.2d at 1332 n. 3.

to avoid. In sum, the Court concludes that Plaintiffs' claims are justiciable.

### III. CONCLUSION

Based on the above analysis of facts and legal principles, the Court finds that Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) should be denied. The act of state doctrine is inapplicable to Plaintiffs' claims, as the validity of the actions of the German government, both in its acquisition and use of the radars as well as its review of the claims of its servicemen, is not called into question by Plaintiffs' complaints. Furthermore, Defendants have not demonstrated that Plaintiffs' claims necessarily raise political questions that render their causes of action non-justiciable.

Accordingly, **IT IS ORDERED** that Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) is **DENIED**.